J-S33021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: F.P., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1421 EDA 2017 |

Appeal from the Dispositional Order Entered April 25, 2017
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0000635-2017

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED AUGUST 08, 2018**

Appellant, F.P., appeals from the dispositional order adjudicating him delinquent for violating the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-6127. Specifically, F.P. argues that the juvenile court erred in denying his motion to suppress physical evidence. We affirm.

F.P. was arrested on March 31, 2017, and charged with violating 18 Pa.C.S.A. §§ 6106 (Firearms not to be carried without a license) and 6110.1 (Possession of a firearm by a minor). Prior to his adjudicatory hearing, F.P. filed a Motion to Suppress the physical evidence against him, a handgun. On April 10, 2017, the juvenile court held a hearing on the Motion.

At the hearing, the Commonwealth presented the testimony of Philadelphia Police Officer Ryan Waltman. Officer Waltman testified that on Friday, March 31, 2017, at 10:46 P.M., he was patrolling the area near 15th Street and Allegheny Avenue, in uniform and a marked police vehicle, with his

_____
*   Former Justice specially assigned to the Superior Court.

partner. The officer testified that the area he was patrolling is a high-crime area. He received a radio call describing two black males: one wearing a blue jacket with blue jeans, and one wearing a gray hooded sweatshirt and black pants. The males were reported as armed with guns in their waistbands, and located at Broad Street and Allegheny Avenue, approximately two and one-half blocks away from Officer Waltman.

Officer Waltman stated that the radio informed the officers that the tip received by the police was "verified," meaning that the person who called 911 and reported the criminal activity also provided their name and telephone number to the 911 operator. *See* N.T., 4/10/17, at 8, 17-18, 24-25. The officer testified that he did not have any information identifying the source of the tip, or any details surrounding the origin of the tipster's belief that the males were armed.

Officer Waltman testified that he arrived at Broad and Allegheny within a few minutes of receiving the call, and spotted two young men who fit the description. One (who was later determined to be F.P.) was wearing a blue jacket and "very, very dark jeans or pants," and the other was wearing a gray hooded sweatshirt and black pants. *Id.* at 11.

Officer Waltman stated that the suspects appeared to be violating the curfew ordinance,[1] which he believed to be 10:00 P.M. The officer was unable

---

[1] *See* Phila. Code § 10-303 ("Unlawful Conduct of Minors"); 53 P.S. § 13349 (authorizing police to arrest persons observed violating ordinance in city of first class).

to say the specific day of the week on which the events occurred, but he testified that in his recollection it was both a weekday and a school night. On cross-examination, he agreed that it was a Friday.

The officers stopped their vehicle, exited, and "asked both males to stop." *Id.* at 12. Officer Waltman stated that he intended "to stop [F.P.] for the curfew violation as well as fitting the [radio call]." *Id.* The officer testified that he did not see anything else of note before he asked the suspects to stop, aside from their similarity to the radio call description and the fact that they appeared to be in violation of curfew.

After Officer Walton told the suspects to stop, F.P. turned to look in his direction, dropped a pair of socks, began tugging at his waistband, and continued walking away. Officer Walton gave a second verbal command to stop, and F.P. "tugged harder" on his waistband and "took off running." *Id.* at 12, 20. During the resulting chase, F.P. dropped several items, including a nine-millimeter handgun. Officer Walton retrieved the gun and arrested F.P. Officer Walton acknowledged that at the time of his arrest, F.P. was less than two months shy of turning 18 years old, stood six feet tall, and weighed 230 pounds.

No other evidence was presented by either party. At the conclusion of the hearing, the court denied the Motion. In its Rule 1925(a) opinion, the court explained that it found that no investigative detention or investigatory stop had occurred. Trial Court Opinion, filed Aug. 1, 2017, at 5. In the court's view, Officer Waltman had attempted to perform an investigative detention, but

"F.P. tugged at his waistband and fled before the officer could approach." *Id.* at 9; *see also id.* at 5.

Despite holding that no investigatory stop had occurred, the court also found that Officer Waltman had reasonable suspicion to justify a detention of F.P., based on the combination of the officer's beliefs that F.P. was violating the city curfew ordinance and that F.P. had a gun.

Regarding the firearm possession, the court found that "the totality of circumstances were close to meeting the reasonable suspicion threshold that F.P. possessed a gun." *Id.* at 6. The court determined that the tip received by Officer Waltman was not anonymous, as the testimony indicated that the 911 dispatcher was "able to identify the caller and obtain a call-back phone number." *Id.* at 6. In examining the totality of the circumstances, the court considered the non-anonymous tip, the appearance of two males matching the radio call's clothing description within two minutes and two and a half blocks of the given location, the Officer's knowledge of the area as a high-crime area, and the Officer's observation of F.P. tugging at his waistband and taking flight.

Regarding curfew, contrary to Officer Waltman's belief, Philadelphia's curfew ordinance prohibits minors 13 years old and older from being in any public place on weekdays, barring exceptions not applicable here, after 10:30 P.M. *See* Phila. Code § 10-303. The ordinance specifies that Fridays are to be considered weekend days, which extends the curfew for minors 13 years old and older to midnight. *Id.* at §§ 10-302, 10-303. However, the court found

- 4 -

that although Officer Waltman was mistaken about the application of the ordinance, as a curfew of midnight, and not 10:00 P.M., applied to F.P., the officer was able to detain F.P. based on his "good faith belief" that F.P. was violating curfew. The court found that "it would be unfair to ask a police officer, responding to a 'verified' radio call of 'two males with a gun'" to determine which curfew would apply "to the two possibly-armed minors he is about to encounter." *Id.* at 4-5.

The court stressed that it was the combination of suspicions of both crimes that justified the Officer's actions, and that "F.P.'s youthful appearance only further added to the suspicion" created by the circumstances supporting gun possession. *Id.* at 6. The court concluded that "the instant matter has unprovoked flight in a high-crime area, matching descriptions provided by a known tipster, tugging at the waistband, and a good faith belief that the individuals were violating the City's curfew ordinance." *Id.* at 10.

After it denied the Motion, the court held an adjudicatory hearing, at which the firearm was admitted as evidence. The court found that F.P. violated the Uniform Firearms Act, and adjudicated him delinquent. The court thereafter committed F.P. to a juvenile facility.

F.P. filed a timely notice of appeal, and raises the following issue:

Did the lower court err by denying [F.P.]'s [M]otion to [S]uppress where the police did not have reasonable suspicion to stop [F.P.] based on what police described as a "verified" radio call, but actually amounted to no more than an anonymous tip, and the court erroneously relied on the officer's "good faith belief" that

[F.P.] was violating a curfew law to find that the officer possessed reasonable suspicion?

F.P.'s Br. at 3.

F.P. argues that the police lacked reasonable suspicion to stop him because the tip received by police was anonymous, the police did not corroborate the tip with independent observations, and there is no "good faith" exception to the exclusionary rule. *See* F.P.'s Br. at 10-15.

Our standard of review on appeal of the denial of a motion to suppress is "to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa.Super. 2011) (citation omitted). If the record supports the factual findings of the suppression court, we reverse "only if there is an error in the legal conclusions drawn from those factual findings." *Id.*

Both federal and state constitutional jurisprudence categorize three levels of interaction between police officers and citizens: (1) mere encounters, (2) investigative detentions, and (3) full arrests. *Commonwealth v. Young*, 162 A.3d 524, 528 (Pa.Super. 2017). First, a "mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen." *Id.* The encounter is consensual, meaning that there is no obligation by the citizen to stop or respond, and it need not be supported by any level of suspicion by the police. *Id.* at 529. Second, an "investigative detention," or "investigative stop," "subjects a suspect to a stop and a period of detention, but does not involve

such coercive conditions as to constitute an arrest." ***Commonwealth v. Fuller***, 940 A.2d 476, 479 (Pa.Super. 2007). An investigative detention must be supported by reasonable suspicion of criminal activity. ***Id.*** Third, a "custodial detention," or full arrest, must be supported by probable cause. ***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014).

Whether an investigative detention has occurred is an objective "determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter." ***Lyles***, 97 A.3d at 303. "In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." ***Commonwealth v. Newsome***, 170 A.3d 1151, 1155 (Pa.Super. 2017) (citation omitted). A court must examine "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." ***Id.***

If an officer approaches a person in public and requests information, but does not convey that compliance is required, a seizure has not occurred, as "such individual still maintains the right to ignore the police and go about his business." ***Lyles***, 97 A.3d at 303 (internal quotation marks and citation omitted). For example, requests for identification or verbal commands that individuals show their hands in the presence of the investigating officers do not of themselves elevate a police interaction above a mere encounter. ***See Commonwealth v. Williams***, 73 A.3d 609, 615 (Pa.Super. 2013) ("[A]n

arresting officer's request for identification does not, by itself, transform his mere encounter with an individual into an unconstitutional investigatory detention"); ***Commonwealth v. Coleman***, 19 A.3d 1111, 1116 (Pa.Super. 2011) (holding that interaction was mere encounter where police questioned defendant on the street and asked him to raise his hands).

Even when a police officer tells an individual to "stop," such an interaction does not necessarily equate to a seizure, particularly when the individual does not stop. ***Newsome***, 170 A.3d at 1156. In ***Newsome***, an officer responded to an anonymous radio call that several individuals were passing around a firearm, and approached the individuals while in full uniform and a police vehicle. ***Id.*** at 1152-53. The officer asked one of the individuals "to come here" to talk to him; on cross-examination the officer stated that he told the defendant to "stop" several times. ***Id.*** at 1153, 1155-56. The officer did not engage his siren or lights, did not brandish his weapon, did not obstruct the defendant's pathway, and did not tell the defendant that he was not free to leave. ***Id.*** at 1156. The defendant kept walking, and discarded a firearm in a flowerpot, at which point he was arrested. ***Id.*** at 1153, 1156. We held that the police officer had not substantially impaired the defendant's liberty of movement, and that the defendant had not been seized prior to discarding the firearm. ***Id.*** at 1156; ***see also Coleman***, 19 A.3d at 1116 (concluding that officer's testimony that he "stopped" defendant referred to his asking defendant a question rather than indicating the officer forced the defendant to remain).

Howeover, pursuant to Pennsylvania law, which provides greater protection than its federal counterpart, "a seizure occurs when an officer gives chase" to a fleeing suspect. *In re M.D.*, 781 A.2d 192, 196 (Pa.Super. 2001). Therefore, any items abandoned by an individual being pursued by the police may only be admissible as evidence when the police possess reasonable suspicion *prior* to giving chase. *Id.*

In the instant case, two uniformed police officers got out of a marked police cruiser; Officer Walton approached F.P. and told him to stop. F.P. did not stop, but grabbed at his waistband, dropped a pair of socks, and continued walking. Officer Walton again told F.P. to stop, at which point F.P. began to run. Officer Walton then gave chase.

We conclude that F.P. was not subjected to an investigatory detention when Officer Walton first told him to stop. As in *Newsome*, Officer Walton approached F.P. and told him to stop, but did not indicate that compliance was required. The officer did not impede F.P.'s way, activate his police lights, or brandish a weapon. Moreover, as in *Newsome*, F.P. kept walking. However, after Officer Walton again asked F.P. to stop, F.P. began to run, and Officer Walton pursued him; it was at that moment that Officer Walton "seized" F.P. *M.D.*, 781 A.2d at 196. We therefore consider whether Officer Walton had reasonable suspicion to stop F.P. before he gave chase.

"Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his

experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Commonwealth v. Chambers**, 55 A.3d 1208, 1215 (Pa.Super. 2012). "[W]hether the facts available to the officer at the moment of intrusion" amount to reasonable suspicion is an objective inquiry, **see id.**, and is based on the totality of the circumstances. **Commonwealth v. Ranson**, 103 A.3d 73, 77 (Pa.Super. 2014)

We have found no authority, and the Commonwealth has not suggested any, to support the trial court's contention that where a police officer suspects an individual of involvement in two completely unrelated crimes, but the officer's suspicion regarding both crimes is *unreasonable*, the unreasonable suspicion aggregates to create reasonable suspicion sufficient to justify detaining an individual. Nor can we countenance such a result in this case, where crimes related to gun possession are not indicative of curfew violation, and *vice versa*. **See Commonwealth v. Stevenson**, 832 A.2d 1123, 1130-32 (Pa.Super. 2003) (examining each ground for stopping separately where officer stopped vehicle on three unrelated grounds—suspected driving without a license, illegal drug activity, and a parking violation). However, we are not bound by the trial court's legal conclusion that the uncontradicted facts of the case do not support a finding that Officer Walton had reasonable suspicion that F.P. was involved in either gun possession or curfew violation, separately.

Notwithstanding the trial court's erroneous reasoning, we affirm because under the objective totality of the circumstances, the officer had reasonable suspicion that F.P. illegally possessed a firearm. Although certain

factors considered by the police, taken alone, may not establish reasonable suspicion, a combination of the same factors may be sufficient. ***M.D.***, 781 A.2d at 197. "[U]nprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify" an investigative detention. ***In re D.M.***, 781 A.2d 1161, 1164 (Pa. 2001). Similarly, flight coupled with an anonymous tip that an individual possesses a firearm is sufficient. ***Id.*** Finally, an anonymous tip that an individual possesses a firearm may be corroborated with evasive behavior and touching of the waistband. ***Commonwealth v. Foglia***, 979 A.2d 357, 359, 361 (Pa.Super. 2009) (*en banc*).

Here, at that time he began to chase F.P., Officer Walton's suspicions were aroused not only due to the information he received on the radio—which announced that the tip was received from a "verified" source—but by his personal knowledge that F.P. was located in a high crime area and his independent observations that F.P. was tugging at his waistband and had taken flight upon approach by the police. ***See Foglia***, 979 A.2d at 359, 361; ***D.M.***, 781 A.2d at 1164. Under the totality of the circumstances, Officer Walton's suspicions that F.P. possessed a gun were objectively reasonable, and he was justified in stopping F.P. to investigate.[2]

---

[2] F.P. argues that because the Commonwealth did not present any evidence regarding the origin of the tip or the basis of the tipster's knowledge, the court should have treated the tip as anonymous, and therefore unreliable. ***See Florida v. J.L.***, 529 U.S. 266, 271 (2000) (holding that "the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about

Because we conclude that the police had reasonable suspicion to stop F.P. to investigate gun possession, we need not address whether Officer Walton was permitted to stop F.P. based on reasonable suspicion that F.P. was violating the curfew ordinance.

For the aforementioned reasons, we hold the juvenile court did not err in denying F.P.'s motion to suppress, and we affirm the adjudication of delinquent.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/18

---

[the defendant]" was unreliable and insufficient to give rise to reasonable suspicion). Given the combination of factual circumstances present, we need not determine whether Officer Walton's receipt of the radio call alone, gave rise to reasonable suspicion.