**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FREDERICK MOORE | : | |
| | : | |
| Appellant | : | No. 1192 EDA 2018 |

Appeal from the Judgment of Sentence April 4, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001177-2017

BEFORE:  STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.: **FILED MAY 21, 2019**

Frederick Moore (Appellant) appeals from the judgment of sentence imposed after he was convicted of firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and persons not to possess a firearm.[1]  We affirm.

On the night of January 4, 2017, Officer Daniel Loesch (Officer Loesch) of the Philadelphia Police Department was investigating open air drug sales near 31st and Diamond Streets, a high-crime and drug area.  Officer Loesch was accompanied by Officers Fitzgerald and McCann.  The officers were members of the 22nd Police District's Drug Enforcement Team.  Officer Loesch and the other officers were in an unmarked police car and wearing plain

---

[1]  18 Pa.C.S.A. §§ 6106(a)(1), 6108, 6105(a)(1).

clothes. Officer Fitzgerald was wearing an official police vest that identified him as a police officer.

At around 10:30 p.m. that night, Officer Loesch observed Appellant and another male walking toward the police vehicle. As he watched Appellant, Officer Loesch observed Appellant adjust his waistband and grab an object in his front waistband that Officer Loesch believed, based on his training and experience, to be a gun. As Appellant and the other male continued walking toward Officer Loesch's vehicle, Appellant said something inaudible to the other male and immediately turned around and began walking in the opposite direction away from the officers.

Without activating their lights and sirens, the officers began driving slowly toward Appellant and the other male. When the police vehicle reached Appellant, Officer Loesch, who was sitting in the front passenger seat, and Officer Fitzgerald, who was sitting directly behind Officer Loesch, put their windows down. At this time, Officer Loesch observed Appellant once again grab and adjust his waistband. Officer Loesch stated that Appellant was grabbing at a hard object in his waistband that he said looked like a handle. As soon as the officers put their windows down, Appellant fled down a nearby alley. Prior to Appellant's flight, the officers did not have an opportunity to say anything to Appellant or verbally identify themselves as police officers.

Officer Loesch exited the police vehicle and pursued Appellant on foot. During the pursuit, Officer Loesch saw Appellant attempt to get rid of

something followed by the sound of a thump on the ground. After apprehending Appellant, Officer Loesch recovered a loaded revolver near where he had observed Appellant attempting to discard an object and heard the thump.

Appellant was arrested and charged with firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and persons not to possess a firearm. On February 23, 2017, Appellant filed a motion to suppress on the basis that police chased and apprehended him without reasonable suspicion to do so. On October 17, 2017, the trial court held a hearing on Appellant's suppression motion, after which the court denied the motion.

The trial court summarized the procedural history that followed:

On January 9, 2018, Appellant appeared before this [c]ourt for a jury trial at the conclusion of which the jury found Appellant guilty of the crimes of Firearms not to be Carried without a License, 18 Pa.C.S. § 6106, and Carrying Firearms on a Public Street, 18 Pa.C.S. § 6108. After the jury rendered its verdict, this [c]ourt conducted a waiver trial on a charge of Possession of Firearm by a Prohibited Person, 18 Pa.C.S. § 6105, and found Appellant guilty.

\*    \*    \*

On April 4, 2018, this [c]ourt imposed consecutive sentences of five to ten years[] and one to five years[ of] incarceration on the Possession of Firearm by a Prohibited Person and Carrying Firearms on a Public Street convictions as well as a concurrent term of probation of five years on the Firearms not to be Carried without a License conviction. On April 16, 2014, Appellant filed a post-sentence motion, which this Court denied on April 18, 2018.

- 3 -

Appellant filed a notice of appeal following the denial of his post-sentence motion. Appellant thereafter filed a counseled court-ordered Pa.R.A.P. 1925(b) Statement of Matters to be raised on Appeal.

Trial Court Opinion, 9/19/18, at 1-2.

On appeal, Appellant presents the following issues for review:

1. Did not the court err by denying Appellant's motion to suppress physical evidence, to wit, the gun he was forced to abandon when officers began chasing Appellant after he adjusted his waistband?

2. Did not the court err and abuse its discretion by denying Appellant's motion for a new trial, where the verdict as to the weapons charges w[as] so contrary to the weight of the evidence as to shock one's sense of justice?

3. Did not the court err and abuse its discretion by imposing on Appellant a manifestly excessive and unreasonable sentence of 6 to 15 years[ of] imprisonment followed by 5 years[ of] probation without articulating the grounds for such a sentence?

Appellant's Brief at 5.

For his first issue, Appellant challenges the trial court's denial of his

suppression motion. Our standard of review is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an

- 4 -

appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Mason*, 130 A.3d 148, 151-52 (Pa. Super. 2015) (quotations and citations omitted). Importantly, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). "To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Pratt*, 930 A.2d 561, 563 (Pa. Super. 2007). Courts in this Commonwealth have recognized three types of interactions between the police and a citizen: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention . . . requires a reasonable suspicion that criminal activity is afoot. A custodial search is an arrest and must be supported by probable cause.

*Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa. Super. 2017).

This Court has explained that when determining whether an interaction is a mere encounter or an investigative detention:

> the focus of our inquiry is on whether a seizure of the person has occurred. Within this context, our courts employ the following objective standard to discern whether a person has been seized: [w]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave. Thus, a seizure does not occur simply because a police officer approaches an individual and asks a few questions.

*Commonwealth v. Cooper*, 994 A.2d 589, 592 (Pa. Super. 2010) (citations, quotation marks, and ellipses omitted). "We observe that well-settled Pennsylvania precedent establishes that a police officer's pursuit of a fleeing suspect constitutes a seizure." *Commonwealth v. Taggart*, 997 A.2d 1189, 1192 (Pa. Super. 2010) (citing *Commonwealth v. Cook*, 735 A.2d 673, 675 (Pa. 1999); *Commonwealth v. Matos*, 672 A.2d 769, 775-76 (Pa. 1996)). Accordingly, we must determine whether Officer Loesch's pursuit and subsequent apprehension of Appellant was supported by reasonable suspicion. *See Newsome*, 170 A.3d at 1154.

When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of *Terry v. Ohio*, 392 U.S. 1 (1968), where the United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot. *In re: D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). In order to prove reasonable suspicion, "the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's

experience." ***Cook***, 735 A.2d at 677. "The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." ***Commonwealth v. Walls***, 53 A.3d 889, 893 (Pa. Super. 2012).

The trial court, in concluding that the police had reasonable suspicion to pursue and detain Appellant, explained:

> Here, it is clear that Appellant was subject to a mere encounter and that he fled of his own volition and not because of anything the police did. During the suppression hearing, Officer Loesch testified, as he did during Appellant's trial, that he and the other officers were investigating drug activity while inside an unmarked police car when he saw Appellant: 1.) make an adjustment in his waist band area to an object the officer believed to be a gun; 2.) suddenly turn around and walk in the opposite direction away from the officers; 3.) make two more adjustments, and; 4.) then flee from the officers, who, other than slowly following Appellant as he walked away from them, did nothing to convey to Appellant that he was not free to leave.

Trial Court Opinion, 9/19/18, at 7.

Appellant argues that no mere encounter took place because he fled prior to the police officers having an opportunity to say anything to him. Additionally, Appellant asserts that the police officers did not have reasonable suspicion to pursue and detain him because he was unaware that he was fleeing from police. Appellant maintains that an individual must be aware he or she is fleeing from the police in order for flight to create reasonable suspicion.

- 7 -

It is well-settled that "unprovoked flight in a high crime area establish[es] a reasonable suspicion to believe that criminal activity is afoot to allow for a **Terry** stop." **Commonwealth v. Brown**, 904 A.2d 925, 930 (Pa. Super. 2006). As this Court indicated, however, in **Commonwealth v. Washington**, 51 A.3d 895 (Pa. Super. 2012):

> [T]he United States Supreme Court speaks of unprovoked flight upon noticing the police in a high crime area. Additional language [in Supreme Court opinions] also supports the conclusion that the suspect must know he is running from law enforcement before a reasonable suspicion can attach. . . . [N]ervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence.

**Id.** at 898 (citing **Illinois v. Wardlow**, 528 U.S. 119, 124 (2000)). In **Washington**, this Court concluded that the defendant's unprovoked flight in a high-crime area did not justify an investigative detention because there was no evidence he was aware that he fled from the police, as the defendant fled before police officers arrived at the scene. **Id.** at 899.

Thus, while we agree with Appellant that a person must know that he or she is running from the police before flight in a high-crime area can raise reasonable suspicion, we nevertheless conclude that the record supports the suppression court's determination that Appellant was aware he was fleeing from police in this instance. While Officers Loesch, Fitzgerald, and McCann were investigating drug sales near 31st and Diamond Streets in Philadelphia, a well-known high-crime and drug area, Officer Loesch observed Appellant, numerous times, adjust his waistband and grab an object in his front

waistband. N.T., 10/17/17, at 8-13, 23. Officer Loesch, based on his training and experience, believed this object was a gun. *Id.* at 13. As the officers' vehicle slowly approached Appellant on the side of street, Officer Loesch noticed that Appellant continued grabbing and adjusting his waistband and observed what looked like a "handle" protruding from Appellant's pants. *Id.* at 14-15, 18. When the vehicle stopped alongside Appellant, and Officer Loesch and Officer Fitzgerald (who was wearing police vest) put their windows down, Appellant immediately fled. *Id.* at 15. Although the officers were in an unmarked car and in plain clothes, Appellant's sudden and immediate flight upon the officers putting their windows down leads to the reasonable inference that Appellant saw Officer Fitzgerald in a police vest and was aware that he was fleeing from police officers. *See id.* at 13-18. This case is thus distinguishable from *Washington*.

The record reflects that Officer Loesch observed Appellant: (1) in a high-crime, high drug area; (2) repeatedly grabbing at and adjusting an object in his waistband that the officer, based on his training and experience, believed to be a firearm; and (3) flee upon realizing that the officers appeared that they were about to speak to him. We therefore conclude that Appellant knowingly fled from the police in a high-crime area and consequently, the police officers possessed the reasonable suspicion necessary to pursue and detain Appellant. *See Brown*, 904 A.2d at 930. Accordingly, the trial court did not abuse its discretion in denying Appellant's suppression motion.

Next, Appellant argues that the trial court abused its discretion in denying his motion for a new trial on the basis that the verdicts were against the weight of the evidence. Appellant claims there was a "total absence of any corroborating evidence that the firearm recovered from the alleyway had ever been in Appellant's possession[,]" other than Officer Loesch's testimony. Appellant's Brief at 24.

Our standard of review for a claim that the verdict was against the weight of the evidence is as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, [] 744 A.2d 745, 751-52 ([Pa.] 2000); [*Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994)]. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" [*Id.*] (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> *Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when

reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 744 A.2d at 753 (emphasis added).

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013).

Instantly, the record reflects that Officer Loesch and the other officers approached Appellant and his companion because Office Loesch observed Appellant grab at and adjust an object in Appellant's waistband that Officer Loesch believed was a gun. N.T., 1/10/18, 21-22, 29, 31-32. At trial, Officer Loesch testified that as the officers' vehicle approached Appellant, he could see the outline of the butt of a gun in Appellant's pants. **Id.** at 43. Officer Loesch testified that Appellant then fled while holding the handle of the gun in his waistband. **Id.** at 40. While pursuing Appellant, Officer Loesch saw Appellant trying to discard the gun and then heard a thump, which the officer believed to be the gun hitting the ground. **Id.** at 40-47. After the officers apprehended Appellant, Officer Loesch recovered the firearm from the location where he heard the loud thump. **Id.** at 50-56.

Both the jury and the trial court, in finding Appellant guilty of multiple firearms violations, credited Officer Loesch's testimony. Although there was no evidence, other than Officer Loesch's testimony, indicating that the firearm Officer Loesch recovered belonged to Appellant, Officer Fitzgerald's testimony

corroborated Officer's Loesch version of the events in almost every respect. *See id.* at 114-35. The jury and the trial court, as the factfinders, were entitled to credit Officer Loesch's testimony. Their decision to credit Officer Loesch's testimony does not shock one's sense of justice. Accordingly, we conclude that the trial court did not abuse its discretion in finding that the verdicts were not against the weight of the evidence.

Finally, Appellant argues that the trial court did not consider the appropriate factors in determining Appellant's sentence. This issue challenges the discretionary aspects of Appellant's sentence.

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process."

*Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotations and citations omitted).

Here, Appellant preserved his discretionary aspects of sentencing claim by raising it in a post-sentence motion. **See** Post-Sentence Motion, 4/16/18, ¶ 6. Appellant also filed a timely notice of appeal and included in his appellate brief a concise statement of the reasons relied upon for the allowance of his appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). **See** Appellant's Brief at 15-16. Thus, we must determine whether Appellant's discretionary aspects of sentencing claim raises a substantial question for our review.

Appellant argues that his sentence was excessive because the trial court did not take into consideration the appropriate factors in determining his sentence. Specifically, Appellant contends that the trial court did not consider the appropriate sentencing factors of 42 Pa.C.S.A. § 9721(b). Appellant's Brief at 16. Appellant maintains "it is clear that the court gave absolutely no meaningful consideration to the proper criteria, specifically Appellant's character, background, and rehabilitative needs." **Id.** at 30. This claim presents a substantial question. **See Commonwealth v. Derry**, 150 A.3d 987, 992 (Pa. Super. 2016) ("An averment that the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of Appellant, as 42 PA.C.S.[ ] § 9721(b) requires[,] presents a substantial question for our

review in typical cases."). Accordingly, we turn to the merits of Appellant's sentencing claim.

Our standard of review for discretionary aspects of sentencing claims is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* (quoting *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006)).

Section 9721(b) of the Sentencing Code sets forth general sentencing standards for trial courts and provides, in pertinent part:

> **(b) General standards.—**. . . the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences an offender following revocation of probation, county intermediate punishment or State intermediate punishment or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

In rejecting Appellant's sentencing claim, the trial court explained:

> [T]he aggregate sentence imposed on the gun charges was not unreasonable and did not constitute an abuse of discretion

- 14 -

because all of the factors . . . were considered by this Court, along with the applicable law, when it fashioned the sentence it imposed on Appellant. This Court carefully considered the information in the pre-sentence reports, which showed that Appellant had a long history of criminal conduct which, in this Court's view, rendered him a danger to the community. It is noted that, "where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, [an appellate court] will not consider the sentence excessive." *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) (citing *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). Moreover, the record herein is full of reasons why this Court sentenced Appellant as it did, including Appellant's possession of a firearm while prohibited from doing so, his vast criminal record, his flight from police, and his dangerous propensities, all of which are aptly demonstrated by the record herein. The law provides that "[a] sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (quoting *Commonwealth v. Fowler*, 893 A.2d 758, 766-67 (Pa. Super. 2006)).

Trial Court Opinion, 9/19/18, at 12-13.

Upon review, we agree with the trial court's disposition of this issue, including its reliance on our *Corley* and *Ventura* decisions. The record reflects that the trial court had the benefit of a pre-sentence investigation report and acknowledged reviewing it. N.T., 4/4/18, at 14. As the trial court rightfully noted, "where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive." *Corley*, 31 A.3d at 298. Additionally, "[i]n those circumstances, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those

considerations along with mitigating statutory factors." ***Id.*** (quotations and citations omitted).  Therefore, there is no support for Appellant's claim that his sentence was excessive and that the trial court did not take into consideration the appropriate factors in sentencing him.  Accordingly, Appellant' discretionary aspects of sentencing claim is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/19