2017 PA Super 290


COMMONWEALTH OF PENNSYLVANIA,  :   IN THE SUPERIOR COURT OF
                                        :       PENNSYLVANIA
            Appellant      :
                                          :
            v.              :      No. 1225 EDA 2016
                                          :
NAIM NEWSOME               :


Appeal from the Order, March 21, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010217-2015


BEFORE:  DUBOW, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.


OPINION BY FORD ELLIOTT, P.J.E.:        **FILED SEPTEMBER 07, 2017**

The Commonwealth appeals[1] from the March 21, 2016 order granting the ***omnibus*** pre-trial suppression motion filed by appellee, Naim Newsome. After careful review, we reverse the suppression order and remand for proceedings consistent with this opinion.

The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows. On the evening of September 22, 2015, Lieutenant Robert Brockenbrough, a 23-year veteran of the Philadelphia Police Department, responded to an anonymous radio call that a group of five to seven males was gathered outside the 2000 block of Croskey Street

---

[1] The Commonwealth certified, pursuant to Pa.R.A.P. 311(d), that the trial court's March 21, 2016 order will terminate or substantially handicap the prosecution.

in Philadelphia and passing around a gun. (Notes of testimony, 3/17/16 at 4-6, 10.)[2] When Lieutenant Brockenbrough arrived at the scene, he observed a group of men huddled together and two of the individuals leave the group and walk to the other side of the street. (*Id.* at 6-7.) One of the men, who was later identified as appellee, began to walk southbound down Croskey Street. (*Id.*) Lieutenant Brockenbrough exited his marked police vehicle and asked appellee "to come here" so he could talk to him, but appellee refused and continued walking down Croskey Street. (*Id.* at 8-9, 18.) At that point, Lieutenant Brockenbrough was in the process of radioing officers in an approaching police wagon to stop appellee, when he observed appellee reach into his waistband, remove an object that looked like a handgun, and place it in a nearby flowerpot. (*Id.* at 9-10, 20.) Lieutenant Brockenbrough testified that he was approximately 8 to 10 feet away from appellee at this point. (*Id.* at 10.) One of the officers in the police wagon, Officer Muhammad, subsequently recovered the firearm. (*Id.* at 9.)

Lieutenant Brockenbrough testified that he approached appellee and the other individuals on the evening in question, in part, because he believed that they were in violation of Philadelphia's 10:30 p.m. curfew. (*Id.* at 9, 11, 18.) Lieutenant Brockenbrough also acknowledged on

---

[2] The record reflects that the transcript of the March 17, 2016 suppression hearing is incorrectly dated March 21, 2016.

cross-examination that he did not observe a bulge or weapon on appellee's person and did not see him make any suspicious movements as he was following him down the street.  (*Id.* at 17-19.)

Appellee was subsequently arrested and charged with unlawful possession of a firearm, firearms not to be carried without a license, and carrying a firearm on public streets or public property in Philadelphia.[3]  On October 30, 2015, appellee filed an **omnibus** pre-trial motion to suppress the firearm, contending that Lieutenant Brockenbrough lacked reasonable suspicion to stop or question him and that this stop constituted an unlawful seizure.  (**See** "Omnibus Pre-Trial Motion," 10/30/15 at 2-3, ¶ II.)  On March 17, 2016, the trial court conducted a hearing on appellee's suppression motion.  Following the hearing, the trial court granted appellee's suppression motion on March 21, 2016.  The record reflects that the trial court did not make any findings of fact or author an opinion in support of its March 21, 2016 order.  However, the trial court did note that "there wasn't a credibility issue[]" with respect to testimony of Lieutenant Brockenbrough, who was the only witness who testified at the suppression hearing. (**See** notes of testimony, 3/21/16 at 3.)  This timely appeal followed.[4]

---

[3] 18 Pa.C.S.A. §§ 6105, 6106, and 6108, respectively.

[4] Although not ordered to do so, the Commonwealth filed a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), that same day.  The trial court did not file a Rule 1925(a) opinion, and Judge Brown is no longer on the bench.

The Commonwealth raises the following issue for our review:

> Where a police officer investigating a report of a group of men with a gun asked [appellee] to stop to talk, and [appellee] declined to do so, but discarded a gun as he walked away, did the [trial] court err in concluding that the officer had "seized" [appellee] before he produced the gun?

Commonwealth's brief at 4.

Our standard of review in addressing a trial court's order granting a suppression motion is well settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Korn*, 139 A.3d 249, 253-254 (Pa.Super. 2016) (internal citations and quotation marks omitted), *appeal denied*, 159 A.3d 933 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals

freedom from unreasonable searches and seizures." ***Commonwealth v. Bostick***, 958 A.2d 543, 550 (Pa.Super. 2008), ***appeal denied***, 987 A.2d 158 (Pa. 2009) (citation and internal quotation marks omitted). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted). Courts in this Commonwealth have recognized three types of interactions between members of the public and the police: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention . . . requires a reasonable suspicion that criminal activity is afoot. A custodial search is an arrest and must be supported by probable cause.

***Commonwealth v. Kendall***, 976 A.2d 503, 506 n.2 (Pa.Super. 2009) (citations and internal quotation marks omitted).

"Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances." ***Commonwealth v. Brown***, 996 A.2d 473, 477 (Pa. 2010). An appellate court must give weight "to the specific, reasonable

inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention." *Id.* (citation omitted). We are mindful of the fact that,

> the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa.Super. 2006) (citations and internal quotations omitted).

In this matter, the Commonwealth argues that the trial court improperly suppressed the firearm in question based on the erroneous assumption that Lieutenant Brockenbrough "seized" appellee when he approached him and asked him to stop and talk. (Commonwealth's brief at 9.) In support of this contention, the Commonwealth maintains that "[b]ecause [Lieutenant Brockenbrough] did not brandish his weapon, use an authoritative tone, or otherwise indicate [appellee] was not free to leave, his mere use of the word 'stop' did not amount to a seizure." (*Id.* at 5, 10-12.)

Courts in this Commonwealth have long recognized that "in assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether or not the citizen-subject has been seized." *Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa.Super. 2013) (citation and brackets omitted), *appeal denied*, 87 A.3d 320 (Pa. 2014).

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained.

*Id.* at 613-614 (citations omitted).

The Pennsylvania Supreme Court has instructed this court to view "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." ***Commonwealth v. Parker***, ___ A.3d ___, 2017 WL 1548932, *4 (Pa.Super. May 1, 2017), citing ***Commonwealth v. Mendenhall***, 715 A.2d 1117, 1119 (Pa. 1998). This court has also set forth the following non-exclusive list of factors:

> the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Id.*, citing ***Commonwealth v. Collins***, 950 A.2d 1041, 1047 n.6 (Pa.Super. 2008) (***en banc***) (citation omitted).

Instantly, in granting appellee's suppression motion, the trial court evidently found that Lieutenant Brockenbrough's interaction with appellee constituted an unlawful "seizure," or at minimum an unconstitutional investigative detention. The trial court placed the following reasoning on the record in support of its March 21, 2016 order:

> THE COURT: Well, I guess basically I find that [Lieutenant Brockenbrough] . . . did not have probable cause or reasonable suspicion to have stopped [appellee] when he stopped him based on an anonymous radio call that was made about five males passing around a gun.

Notes of testimony, 3/21/16 at 3. For the following reasons, we disagree.

Our review of the record in this matter reveals that Lieutenant Brockenbrough's initial interaction with appellee was a mere encounter that developed into a lawful investigative detention only after he observed appellee discard the firearm at issue. On the evening in question, Lieutenant Brockenbrough responded to an anonymous radio call that several individuals were passing around a firearm in an area in Philadelphia known for shootings. (Notes of testimony, 3/17/16 at 5-6.) Upon arriving at the scene, Lieutenant Brockenbrough exited his police vehicle and "asked" appellee "to come here" so he could talk to him, but appellee refused and continued walking down the street. (*Id.* at 8-9.) Lieutenant Brockenbrough testified that he approached appellee to both investigate the radio call and because he believed appellee to be in violation of Philadelphia's curfew. (*Id.* at 9, 11.)

Although Lieutenant Brockenbrough was in full uniform at the time of this encounter and arrived to the scene in a marked police vehicle, he did not engage the vehicle's siren or lights. (*Id.* at 8.) Additionally, there was no evidence suggesting Lieutenant Brockenbrough brandished his weapon or engaged in an overwhelming show of force. Lieutenant Brockenbrough did not tell appellee that he was not free to leave, nor was there any evidence presented that he positioned himself in a manner that obstructed appellee's ability to continue walking down Croskey Street. (*Id.* at 9.) Although Lieutenant Brockenbrough acknowledged on cross-examination that he "asked [appellee] to stop" two or three times, there was no evidence that Lieutenant Brockenbrough threatened any consequences for non-compliance or used an authoritative tone. (*Id.* at 19.) Moreover, appellee felt no compulsion to stop and told Lieutenant Brockenbrough as much as he continued to walk away. (*Id.* at 9, 18-19.) Only thereafter did Lieutenant Brockenbrough make an arrest after observing appellee voluntarily discard a firearm as he continued walking down the street. (*Id.* at 9-10.)

Based on the foregoing, the totality of the circumstances presented in this case fails to support a conclusion that appellee had been seized during his initial encounter with Lieutenant Brockenbrough. Although it is well settled in this Commonwealth that an anonymous call by itself does not provide reasonable suspicion or probable cause sufficient to support a

seizure, *see*, *e.g.*, ***Commonwealth v. Ranson***, 103 A.3d 73, 78 (Pa.Super. 2014), ***appeal denied***, 117 A.3d 296 (Pa. 2015), it would amount to a dereliction of a police officer's duties if he failed to investigate a report of individuals passing around a firearm in an area known for shootings. Clearly, Lieutenant Brockenbrough's request of appellee that he "come here" so he could talk to him was not a substantial impairment on appellee's liberty of movement, particularly considering Lieutenant Brockenbrough's legitimate concerns for the safety of the community and his sound belief that appellee may have been in violation of Philadelphia's curfew.

Accordingly, we conclude that the trial court erred in granting appellee's ***omnibus*** pre-trial motion to suppress the firearm in question.

Order reversed.  Case remanded for further proceedings consistent with this opinion.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2017