J-S41004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD SANTIAGO | : | |
| | : | |
| Appellant | : | No. 3727 EDA 2017 |

Appeal from the Judgment of Sentence October 18, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0004133-2017

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED AUGUST 22, 2018**

Appellant Richard Santiago appeals the judgment of sentence entered by the Court of Common Pleas of Bucks County after Appellant was convicted of Possession of a Controlled Substance with Intent to Deliver (PWID), Possession of a Controlled Substance, and Use/Possession of Drug Paraphernalia.[1]   Appellant claims the trial court erred in denying his suppression motion.   We affirm.

On May 24, 2017, Appellant was arrested and charged with the aforementioned offenses and on October 4, 2017, Appellant filed a motion to suppress evidence obtained from the stop of his vehicle.   On October 17, 2017, the trial court held a suppression hearing at which the Commonwealth presented the testimony of Trooper Thomas Fleisher.

_____

[1] 35 P.S. § 780-113(a)(30), (a)(16), and (a)(32), respectively.

_____

*   Former Justice specially assigned to the Superior Court.

Trooper Fleisher has been employed by the State Police for over ten years and has served as member of the Drug Law Enforcement Division's Eastern Shield Unit since September 2013. This unit is primarily tasked with patrolling highways to promote public safety and detect contraband.

Trooper Fleisher testified that he has extensive experience with the interdiction of contraband on highways and claimed to have conducted thousands of arrests. Trooper Fleisher indicated that he has attended additional continuing education classes to remain knowledgeable on drug interdiction trends.

Trooper Fleisher testified that on May 24, 2017, at approximately 12:25 p.m., he was on patrol in a marked vehicle on the Pennsylvania Turnpike in Bensalem Township near the Pennsylvania-New Jersey border. At this time, he observed a green 1998 Acura Integra traveling eastbound toward New Jersey. Trooper Fleisher noticed that the Acura was following a construction vehicle too closely; although the vehicles were travelling between 55-65 miles per hour, the Acura was less than a car length away from the construction vehicle. Based on this observation, Trooper Fleisher initiated a traffic stop.

Trooper Fleisher approached the Acura, which had very dark window tinting which prevented Trooper Fleisher from viewing inside of the vehicle. Trooper Fleisher noted that the dark tinting raised suspicion as such tinting is often used to conceal activity within a vehicle. After Trooper Fleisher informed the driver, Appellant, that he was stopped for following the truck too closely

and asked for Appellant's license and registration, Appellant complied with the trooper's direction.

Trooper Fleisher noticed that Appellant's vehicle had a single key in the ignition. Based on his training and experience, Trooper Fleisher knew it was common practice of drug traffickers to employ "work vehicles" that several employees of the drug distribution organization can access for deliveries. In addition, Trooper Fleisher made note of the vehicle's windshield stickers supporting the Police Benevolent Association and Teamsters; in Trooper Fleisher's experience, he learned that drug traffickers would often display similar stickers to appear aligned with the interests of police officers.

Trooper Fleisher asked Appellant where he was going; Appellant told the officer that he was coming from Parx Casino and was in the area looking for work. Trooper Fleisher found this explanation to be strange as Appellant was wearing sweatpants, a T-shirt, and sandals at that time. Trooper Fleisher also noted that he had stopped Appellant's vehicle at the Bristol exit of the Turnpike, which is known to be a drug trafficking corridor.

Trooper Fleisher returned to his patrol car to run Appellant's license and registration. A criminal history check revealed that Appellant had prior convictions in New Jersey for possession of a controlled substance with intent to deliver a well as a bench warrant from South Carolina for forgery, which was not an extraditable offense. Trooper Fleisher also learned that the Acura was registered to a third party female from Perth, New Jersey.

While Trooper Fleisher was obtaining this information in his patrol car, he received a call from Trooper Justin Hope, who was also on patrol in this same area at that time. Trooper Hope informed Trooper Fleisher that he had observed Appellant's vehicle traveling in the opposite direction on the Turnpike just an hour earlier. Based on this information, Trooper Fleisher suspected that Appellant had previously lied about his whereabouts before the traffic stop, and concluded that this timeframe would allow Appellant to make a short trip, arrange a drug transaction, and return within a short timeframe. Trooper Fleisher testified that traveling between Pennsylvania and New Jersey in a short time span was consistent with drug trafficking activity.

When Trooper Fleisher returned to Appellant's vehicle, he asked Appellant to step out of the vehicle and approach the back of the vehicle, where they could speak away from the traffic. Trooper Fleisher asked for Appellant's consent to a patdown, which Appellant permitted. Thereafter, Trooper Fleisher told Appellant that he would issue him a warning for the vehicle code violation of following too closely, but did not tell Appellant he was free to leave.

Trooper Fleisher asked Appellant about his criminal history, after which Appellant told the officer about his South Carolina warrant. In addition, Trooper Fleisher again asked Appellant what time he had come to Pennsylvania that morning, and Appellant indicated that he had arrived in Pennsylvania at about 8:30 or 9:30 a.m. Trooper Fleisher found this statement reaffirmed his belief that Appellant was lying about his whereabouts

that morning as Trooper Hope had observed his vehicle traveling into Pennsylvania between 11 and 11:30 a.m.

Thereafter, Trooper Fleisher asked Appellant for permission to search his vehicle. Appellant gave his consent, reading and signing a written waiver form agreeing to the search. Upon searching the vehicle, Trooper Fleisher looked behind the front passenger seat and discovered a shopping bag filled with other bags of heroin wrapped in newspaper. Appellant was placed under arrest for PWID and was given his *Miranda* rights. Appellant admitted knowing that the heroin was in the vehicle.

After the conclusion of the evidence, the trial court denied Appellant's suppression motion. Appellant proceeded to a stipulated bench trial at which the trial court convicted Appellant of the aforementioned offenses. The lower court sentenced Appellant to two and a half (2½) to five (5) years' imprisonment. This timely appeal followed.

Appellant raises the following issues for our review:

A. Did the lower court err in holding that the trooper had reasonable suspicion to conduct an investigative detention of Appellant following a traffic stop?

B. Did the lower court err in finding that Appellant's consent to the search was valid and was not tainted by the preceding illegal detention?

Appellant's brief, at 4.

In reviewing a trial court's decision to deny a suppression motion, our standard of review is as follows:

> In reviewing the denial of a suppression motion, our role is to determine [] whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.
>
> *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654 (2010) (internal quotations and citations omitted). Our scope of review is limited to the evidence presented at the suppression hearing. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1080 (2013).

*Commonwealth v. Thran*, 185 A.3d 1041, 1043 (Pa.Super. 2018) (quoting

*Commonwealth v. Mackey*, 177 A.3d 221, 226 (Pa.Super. 2017)).

Appellant concedes that Trooper Fleisher lawfully conducted a traffic stop of his vehicle and had the right to ask Appellant to step out of the vehicle during the stop. However, Appellant argues that Trooper Fleisher did not have the authority to continue his investigative detention once his driver's license and registration were determined to be valid. As Appellant argues that Trooper Fleisher did not have reasonable suspicion of any criminal activity to justify any additional questioning, he asserts that he was subjected to an unreasonable seizure that invalidated his consent to the search of vehicle. As

a result, Appellant claims that the heroin subsequently seized from the vehicle should be suppressed as fruit of the poisonous tree.

Given that there is no dispute as to the legality of the initial traffic stop, we will first analyze whether Trooper Fleisher had the authority to continue to detain Appellant and ask him additional questions. This Court has held:

> When conducting a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check and issue a citation. Upon producing a valid driver's license and registration, the driver must be allowed to proceed on his way, without being subject to further delay by police for additional questioning. In order to justify detaining the driver for further questioning, the officer must have reasonable suspicion of illegal transactions in drugs or of any other serious crime.

***Commonwealth v. Lopez***, 609 A.2d 177, 181-82 (Pa.Super. 1992) (citations and quotation marks omitted).

In determining whether an officer may continue to detain an individual beyond an initial traffic stop, our courts have held the following:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. ***Commonwealth v. Cook****,* 558 Pa. 50, 735 A.2d 673, 676 (1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." *Id.* In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. ***In re D.M.****,* 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." ***Cook****,* 735 A.2d at 676 (quoting ***Terry v. Ohio****,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "even a combination of innocent facts, when taken together, may

warrant further investigation by the police officer." **Cook**, 735
A.2d at 676.

**Commonwealth v. Kemp**, 961 A.2d 1247, 1255 (Pa.Super. 2008) (quoting

**Commonwealth v. Rogers**, 578 Pa. 127, 134, 849 A.2d 1185, 1189 (2004)).

In **Kemp**, this Court concluded that an officer was justified in detaining the

appellant beyond the initial traffic stop as the officer had reasonable suspicion

that the appellant was engaged in criminal activity based on, *inter alia*, the

trooper's extensive training in drug trafficking detection, the appellant's use

of a large amount of air fresheners to mask scents in his vehicle, and the

appellant's use of a vehicle registered to a third-party).

In this case, after Trooper Fleisher conducted a valid traffic stop of

Appellant's vehicle and determined that he had a valid license and registration

for the vehicle, he was required to demonstrate that he had reasonable

suspicion of criminal activity to detain Appellant beyond the initial traffic stop.

After reviewing the totality of the circumstances in this case, we agree

with the trial court's that Trooper Fleisher had reasonable suspicion to believe

that Appellant was engaged in criminal activity. The trial court specifically

found:

> [t]he following factors when considered in their totality, would
> cause a reasonable police officer with Trooper Fleisher's
> experience to believe there was reasonable suspicion that criminal
> activity was afoot: (1) Appellant drove a vehicle registered to
> another person; (2) the vehicle had dark tinted windows; (3)
> Appellant traveled along a known drug corridor; (4) the vehicle
> had Police Benevolent Association and Teamster disclaimers,
> presumably displayed to curry favor with law enforcement; (5)
> Appellant operated the vehicle using a single key, a known drug
> trafficking indicator; (6) Appellant had a criminal history including

- 8 -

drug offenses; (7) South Carolina had an outstanding bench warrant for Appellant; and (8) Appellant lied to Trooper Fleisher about his purpose for traveling to New Jersey as contradicted by Appellant's outfit and Trooper Hope. … The instant facts, viewed as a reasonable person with Trooper Fleisher's experience, amount to reasonable suspicion.

Trial Court Opinion, 1/30/18, at 9.

Although Appellant argues that each of these facts do not necessarily show that Appellant was involved in criminal activity, when considering all of the facts together in light of Trooper Fleisher's extensive training and experience in drug trafficking detection on Pennsylvania highways, we find it reasonable for the trial court to give weight to Trooper Fleisher's inferences that Appellant was involved in drug trafficking. *See Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (2017) (emphasizing that "[a]n appellate court must give weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention") (citation omitted).

Accordingly, the trial court did not err in rejecting Appellant's claim that Trooper Fleisher's continued investigation beyond the initial traffic stop constituted an illegal seizure. Thus, based on this conclusion, we need not review Appellant's claim that his consent to the search of the vehicle was invalidated by the allegedly illegal seizure of his person.

For the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: 8/22/18