J-A16027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                              :       PENNSYLVANIA
                              :
              v.              :
                              :
                              :
BENJAMIN JAMES PERFETTO       :
                              :
            Appellant         :   No. 1924 MDA 2018

Appeal from the Judgment of Sentence Entered October 30, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0005833-2017

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 17, 2019**

Benjamin James Perfetto (Appellant) appeals from the judgment of

sentence imposed after the trial court convicted him of possession of drug

paraphernalia (35 P.S. § 780-113(a)(32)), two counts of driving under the

influence of a controlled substance (75 Pa.C.S.A. §§ 3802(d)(1)(i), (iii)),

driving a vehicle at an unsafe speed (75 Pa.C.S.A. § 3361), and various other

summary violations of the Pennsylvania Vehicle Code.   After careful

consideration, we affirm.

The trial court summarized its findings of fact as follows:

1.    On July 9, 2017, at approximately 10:50 p.m., Officer
Jeffrey [Futchko] of the Western Berks Regional Police
Department was parked in a parking lot in the 100 block of West
Penn Avenue, Berks County, Pennsylvania.

2.    Officer [Futchko], who has eighteen years of experience as
a police officer, testified that in that area, Penn Avenue is a two-
lane road with a mix of residential and commercial properties.

_____
* Former Justice specially assigned to the Superior Court.

3.      Officer [Futchko] observed a silver Chevy Malibu driving at what he estimated to be [50] miles-per-hour in a [35] mile-per-hour zone.

4.      Officer [Futchko] did not clock the vehicle's speed.

5.      The Chevy Malibu was traveling over the crest of a hill toward an intersection where accidents had occurred in the past.

6.      Officer [Futchko] credibly testified that it is an area where it is difficult for drivers to see.

7.      Officer [Futchko] credibly testified that people frequently cross between bars at the intersection.

8.      The weather conditions were clear that evening.

9.      The Chevy Malibu was not weaving, did not cross over the center line, and did not almost hit another car or a pedestrian.

10.     Officer [Futchko] pulled out of the parking lot and initiated a traffic stop.

Trial Court Opinion, 5/1/18, at 2-3.

During the traffic stop, Officer Futchko detected the odor of burnt marijuana emanating from Appellant's vehicle.  Officer Futchko proceeded to conduct two field sobriety tests, both of which indicated signs of impairment.  Consequently, Officer Futchko placed Appellant under arrest.

On December 27, 2017, the Commonwealth filed a criminal information charging Appellant with multiple violations of the both of the Controlled Substance, Drug, Device and Cosmetic Act and the Pennsylvania Vehicle Code.  On January 16, 2018, Appellant file an omnibus pre-trial motion in which he sought the suppression of the evidence obtained from his vehicle stop and dismissal of his charges pursuant to a writ of *habeas corpus*.  Appellant argued

- 2 -

that Officer Futchko lacked probable cause to stop him for violating the Pennsylvania Vehicle Code. On March 29, 2018, the trial court held a hearing on Appellant's suppression motion. On May 1, 2018, the trial court denied Appellant's suppression motion and his request for *habeas* relief.

Thereafter, Appellant waived his right to a jury trial. On August 29, 2018, the trial court held a bench trial. On September 13, 2018, the trial court entered its verdict, finding Appellant guilty of the above-referenced crimes.

On October 30, 2018, the trial court sentenced Appellant to 90 days to 5 years of incarceration. Appellant did not file any post-sentence motions. On November 21, 2018, Appellant timely appealed to this Court. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents the following issues for review:

A. WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT]'S MOTION TO SUPPRESS EVIDENCE WHERE THE POLICE OFFICER FAILED TO ARTICULATE SPECIFIC FACTS TO ESTABLISH PROBABLE CAUSE TO JUSTIFY THE TRAFFIC STOP BASED ON AN ALLEGED VIOLATION OF THE MOTOR VEHICLE CODE.

B. WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT]'S MOTION TO SUPPRESS EVIDENCE WHERE THE POLICE OFFICER LACKED PROBABLE CAUSE TO INITIATE A TRAFFIC STOP BASED ON AN ALLEGED VIOLATION OF THE MOTOR VEHICLE CODE.

C. WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT]'S PETITION FOR WRIT OF HABEAS CORPUS WHERE ALL EVIDENCE ACQUIRED AND SEIZED FOLLOWING THE STOP OF

[APPELLANT]'S VEHICLE WAS FRUIT OF THE POISONOUS TREE OBTAINED FOLLOWING AN UNLAWFUL TRAFFIC STOP.

Appellant's Brief at 4.

Each of Appellant's three issues challenge the trial court's denial of his suppression motion. Therefore, we address these issues together, mindful of the following:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Mason*, 130 A.3d 148, 151-52 (Pa. Super. 2015) (quotations and citations omitted). Importantly, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). "To secure the right of citizens to be free from

such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive."

***Commonwealth v. Pratt***, 930 A.2d 561, 563 (Pa. Super. 2007).  Courts in this Commonwealth have recognized three types of interactions between the police and a citizen:  a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond.  An investigatory stop, which subjects a suspect to a stop and a period of detention . . .  requires a reasonable suspicion that criminal activity is afoot.  A custodial search is an arrest and must be supported by probable cause.

***Commonwealth v. Newsome***, 170 A.3d 1151, 1154 (Pa. Super. 2017).

With respect to the quantum of cause necessary to conduct a traffic stop, the relevant statutory authority is Section 6308(b) of the Pennsylvania Vehicle Code, which provides:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

Section 6308(b) requires only reasonable suspicion in support of a vehicle stop for gathering information necessary to enforce the Vehicle Code

violation. However, a police officer must have probable cause to support a vehicle stop where the officer's investigation following the stop serves no "investigatory purpose relevant to the suspected [Motor Vehicle Code] violation." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), ***appeal denied***, 25 A.3d 397 (Pa. 2011).

> Our Supreme Court explained:
>
> Indeed, the language of § 6308 reflects this very intent. Stops based on reasonable suspicion are allowed for a stated investigatory purpose: "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." 75 Pa.C.S. § 6308(b). This is conceptually equivalent to the purpose of a ***Terry***[1] stop. It does not allow all stops to be based on the lower quantum – it merely allows this for investigatory stops, consistent with the requirements of both federal and state constitutions. We interpret the legislature's modification of § 6308 as merely eliminating the statutory requirement of a greater level of information for a stop under the Vehicle Code than is constitutionally required for all other stops.

***Commonwealth v. Chase***, 960 A.2d 108, 116 (Pa. 2008). "[I]f the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop – if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion." ***Id.*** at 115. Therefore, "when the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional." ***Id.***

---

[1] ***Terry v. Ohio***, 392 U.S. 1 (1968).

Officer Futchko stopped Appellant based on his determination that Appellant had violated Section 3361 of the Pennsylvania Vehicle Code. Section 3361 provides:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361.

The parties do not dispute that probable cause was the necessary quantum of cause for stopping Appellant under Section 3361, as the statute reflects that Officer Futchko could not have possessed a legitimate expectation of learning additional relevant information concerning the suspected criminal activity during the stop. *See Chase*, 960 A.2d at 115-16. Officer Futchko had to determine prior to conducting the stop whether Appellant was driving in manner that was reasonable and prudent under the conditions. *See id.*

Appellant, however, asserts that the Commonwealth failed to present evidence sufficient to prove Officer Futchko had probable cause to stop Appellant for violating Section 3361 of the Vehicle Code. Appellant argues that Officer Futchko's testimony did not indicate that he officially clocked Appellant's speed, that Appellant maintained an unsafe speed through the

intersection the officer was observing, or that Appellant otherwise drove in an erratic manner.

Probable cause exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Stultz*, 114 A.3d 865, 883 (Pa. Super. 2015). With respect to probable cause determinations in the context of Section 3361, this Court has explained:

> In order for a traffic stop to be justified, a police officer must have probable cause to believe that a violation of the Motor Vehicle Code or regulations has taken place. *Commonwealth v. Gleason*, 785 A.2d 983, 989 ([Pa.] 2001). . . . [Section 3361] provides, in relevant part, that no one "shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." 75 Pa.C.S.A. § 3361.
>
> *   *   *
>
> In a . . . case that addressed . . . Section 3361, the Commonwealth did not offer proof of actual or estimated speed, but a police officer testified to observing the defendant-driver "traveling at an extreme rate of speed." *Commonwealth v. Heberling*, 678 A.2d 794 ([Pa. Super]. 1996). In response to a claim that the evidence was insufficient to support the conviction, the panel reiterated that the actual speed is irrelevant to a Section 3361 inquiry. Rather, the focus is on the surrounding circumstances, including "the amount of traffic, pedestrian travel and weather conditions, ... the nature of the roadway itself (*e.g.*, whether four-lane, interstate, or rural; flat and wide, or narrow and winding over hilly terrain; smooth-surfaced, or full of potholes; clear, or under construction with abrupt lane shifts.)" *Id.* at 796. Based on the police officer's testimony that the defendant was approaching an intersection and a hill crest at an extreme rate of speed, we upheld the trial court's judgment of sentence, even though weather conditions were clear and normal and no other

traffic was affected nor were any pedestrians at risk. ***See id.*** at 795, 797.

\*　　\*　　\*

In the case *sub judice*, . . . Appellant's single act of "hugging the east part of the shoulder" of the road did not provide a sufficient basis . . . to stop him. The question remains, then, whether the act of speeding, at the approach to an intersection, when the speed is estimated by the observing officer, with no other traffic in the area, when the officer observes "a lot of dust and cinders" blowing up from the icy roadway as the vehicle comes around a sharp curve as it crests a hill, establishes a violation of the driving-vehicle-at-safe-speed statute, Section 3361. We have carefully reviewed the record and conclude that the suppression court's factual findings of the surrounding circumstances are sufficient for the trier of fact to have concluded beyond a reasonable doubt that Appellant was operating his vehicle at an unsafe speed. Accordingly, we conclude that the stop of Appellant's vehicle was lawful, and the trial court properly denied Appellant's motion to suppress.

***Commonwealth v. Minnich***, 874 A.2d 1234, 1236-39 (Pa. Super. 2005) (citation omitted).

In rejecting Appellant's suppression argument, the trial court concluded that "[t]he facts in ***Heberling*** are nearly identical to those in the instant case, where Officer [Futchko] observed [Appellant]'s vehicle driving over the crest of a hill toward an intersection frequented by pedestrians at what Officer [Futchko] estimated to be fifty miles-per-hour in a thirty-five mile-per-hour zone." Trial Court Opinion, 5/1/18, at 6. We agree.

The certified record reflects that on the night in question, Officer Futchko had just parked his vehicle in a lot near the intersection of Church Street and West Penn Avenue in Robesonia Borough, Berks County. N.T., 3/29/18, at 5.

- 9 -

West Penn Avenue is a two-lane road in a mixed residential and commercial district. *Id.* at 6. Near that intersection, along West Penn Avenue, are several single family homes and two bars, which typically create a regular amount of foot traffic during the evening and night hours. *Id.* The intersection also has visibility issues due to a crest in the hill as drivers heading eastbound on West Penn Avenue approach Church Street. *Id.* According to Officer Futchko, this intersection is known as a high-risk area that has been the location of several motor vehicle accidents. *Id.* at 7, 9. Officer Futchko testified that before he was able to set up his speed timing device, he observed Appellant's vehicle coming over the crest of the hill toward the intersection of West Penn Avenue and Church Street "at a high rate of speed[,]" which by his estimation was 50 miles per hour in a 35 mile per hour zone. *Id.* at 7. As the vehicle passed Officer Futchko's location near the intersection, Appellant did not brake. *Id.* Officer Futchko stated that when he began to follow the vehicle, it maintained a speed of 50 miles per hour until the officer activated his lights and conducted a traffic stop. *Id.* at 11.

Thus, Officer Futchko's suppression hearing testimony reflects that he observed Appellant's vehicle approaching an intersection known for visibility problems, accidents, and pedestrian traffic at a speed that, by his estimation, was well in excess of the speed limit. Therefore, we conclude that the trial court did not abuse its discretion in concluding that Officer Futchko had probable cause to believe Appellant had violated Section 3361, and

consequently, did not err in denying his suppression motion and his request to dismiss his charges.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/17/2019