J-A01016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THAYREE BEVERLEY | : | |
| | : | |
| Appellant | : | No. 189 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 17, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008411-2021

BEFORE: DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.: **FILED FEBRUARY 3, 2025**

Appellant, Thayree Beverley, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial conviction for simple assault, recklessly endangering another person ("REAP"), and unlawful restraint.[1] We affirm.

The relevant facts underlying this appeal are as follows. On September 15, 2021, between 12:30 and 12:45 a.m., M.G.[2] left a friend's apartment on Drexel University's campus and began walking alone back to her own apartment. M.G. observed that the streets were mostly empty but noticed a man walking across the street, in the same direction she walked, fumbling with a white grocery bag. As M.G. reached 42nd Street and walked towards

---

[1] 18 Pa.C.S.A. §§ 2701, 2705, and 2902(a)(1), respectively.

[2] The trial court uses the complainant's full name in its opinion but, considering the nature of the charges, we have elected to refer to M.G. by her initials.

Chester Avenue, she heard footsteps behind her and turned around. At that time, she recognized the man she had observed earlier, a black male approximately 200 to 230 pounds, wearing black track pants and a black zip-up jacket with a reflective logo.

The man lunged at her and knocked her to the ground. M.G. and the man wrestled while she screamed for help, but the man placed a rag over her mouth and nose so she could not scream, attempting to shove it further into her mouth. M.G. attempted to bite and kick the man and tried to break free as he grabbed her breasts, pulled her hair, and grabbed her around the waist. A passing motorist noticed the attack, stopped his car, and yelled; M.G.'s attacker fled. The motorist drove M.G. to her apartment, where she later called police. M.G. suffered cuts and bruises to her knees, knuckles, and elbows, as well as swelling and scratches on her chin, cheeks, and nose.

University of Pennsylvania Police Officer Paul Guercio was on routine patrol in West Philadelphia that morning and, between 1:25 and 1:30 a.m., received a police radio call for a rape in progress at 40th and Pine Street, and a second call for an assault near 42nd and Pine Street. Both calls provided a description of the suspect: a black male with a medium build, in his thirties, wearing all black clothing and carrying a white shopping bag. Officer Guercio began to canvass the area and observed Appellant inside Clark Park, near the intersection of 43rd Street and Baltimore Avenue, wearing dark pants and a white t-shirt, holding a white shopping bag.

Officer Guercio drove into the park and approached Appellant, who

attempted to back away and hide behind a tree, to ask whether he had seen anyone attempting to rape a woman; Appellant answered in the negative. Officer Guercio noticed fresh, bright red, and slightly bloody abrasions on Appellant's left wrist and forearm, and that Appellant was sweating. Officer Guercio exited the car and asked Appellant for identification, which Appellant could not provide. Officer Guercio then instructed Appellant to place his hands on the hood of his car for a frisk, at which time he observed a black jacket protruding from the shopping bag. Officer Guercio placed Appellant in handcuffs and called for backup.

Philadelphia Police Detective Kimberly Organ obtained surveillance video from the night of the attack. After executing a search warrant of Appellant's belongings, Detective Organ recovered a white shopping bag, which contained various black clothing as well as a black Nike jacket with a reflective logo. Detective Organ photographed Appellant at the time of his arrest, documenting injuries to Appellant's arm, forearm, wrist, and knuckles.

Appellant was arrested and charged with aggravated assault, simple assault, attempted rape, attempted sexual assault, indecent assault, unlawful restraint, REAP, and possession of an instrument of crime.

On May 17, 2022, Appellant filed an omnibus pretrial motion to suppress physical evidence and identification testimony. Appellant argued that the officer detained him without reasonable suspicion when he ordered Appellant to come over to his car. According to Appellant, the descriptions of the perpetrator did not match his own description, and the officer did not see the

black jacket until after he had asked Appellant to put his hands on the car, at which point Appellant was already detained. Appellant further argued that the approach was not a mere encounter, because the officer had posed his questions to Appellant after driving on a pedestrian walkway in the middle of the park.

On December 17, 2022, the court denied Appellant's motion concerning the suppression of physical evidence, finding that Officer Guercio had acted lawfully when he initially approached and later detained Appellant, because Appellant had been spotted in a public park at 1:30 a.m., two to three blocks from the scene of an attempted rape, moments after it was reported; further, Appellant matched the description of the suspect broadcast over police radio, and carried a white bag with dark clothing inside. Nevertheless, the court granted Appellant's suppression motion with respect to the complainant's identification testimony, which the court found unduly suggestive.[3]

On May 22, 2023, the case proceeded to a bench trial where the Commonwealth played surveillance video of the attack. M.G. identified the black jacket that her attacker wore, which matched one of the jackets found in Appellant's possession. At the close of trial, the court found Appellant guilty

_____

[3] When M.G. was brought to Clark Park for a possible identification, 15 minutes after Appellant had been stopped, Officer Guercio draped the black Nike jacket from Appellant's white shopping bag over Appellant's shoulders. At the time, Appellant was in handcuffs and surrounded by half a dozen police officers. At that time, M.G. identified him as her attacker.

of simple assault, REAP, and unlawful restraint. The court acquitted Appellant of the remaining charges.

On August 17, 2023, the court sentenced Appellant to 9 to 18 months of incarceration for unlawful restraint, and two consecutive terms of two years of probation for simple assault and REAP. On August 28, 2023, Appellant filed a post-sentence motion, which the trial court denied by operation of law on December 28, 2023.

On January 2, 2024, Appellant timely filed a notice of appeal. On January 5, 2024, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On February 9, 2024, Appellant timely complied.

On appeal, Appellant raises a single issue for review:

> I. Did the motions court err in denying the motion to suppress physical evidence, where the evidence was the fruit of a detention and arrest without reasonable suspicion or probable cause?[4]

(Appellant's Brief at 2).

Appellant contends that the physical evidence recovered from the shopping bag were the fruit of an unlawful stop. Appellant argues that as soon as Officer Guercio drove his police car towards Appellant, Appellant was detained. Further, Appellant asserts that even if he was not detained at that

_____

[4] Although Appellant contends that he was arrested without probable cause, he has failed to develop any argument regarding this point, and failed to support this claim by citation to the record or appropriate legal authority. As a result, he has waived this issue for purposes of appeal. *See* Pa.R.A.P. 2119(a); ***Commonwealth v. Wilson***, 147 A.3d 7 (Pa.Super. 2016).

point, Officer Guercio's orders for Appellant to "come over to my car" constituted an investigative detention. Appellant claims that police lacked reasonable suspicion to stop him because he did not match the flash description that had been received over police radio. Appellant insists that varying descriptions of the man police were looking for were provided, with either a husky build, medium build, or thin build. Appellant posits that he was detained simply because he was wearing black pants and carrying a plastic bag, several blocks away from the crime. Appellant concludes that his detention was not supported by reasonable suspicion and the court erred in denying suppression of the contents of the shopping bag. We disagree.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Williams*, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.* at 27. The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province

as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. ***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa.Super. 2017) (quoting ***Commonwealth v. Jones***, 121 A.3d 524, 526-27 (Pa.Super. 2015), *appeal denied*, 635 Pa. 750, 135 A.3d 584 (2016)).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. ***Commonwealth v. Morrison***, 166 A.3d 357, 363-64 (Pa.Super. 2017). "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Hampton***, 204 A.3d 452, 456 (Pa.Super. 2019).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to

- 7 -

stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (quoting *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)).

During a mere encounter, "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). For example, in *Commonwealth v. Newsome*, 170 A.3d 1151 (Pa.Super. 2017), an officer in full uniform and a marked patrol car without lights or sirens engaged, approached a defendant and asked the defendant to "come here" so he could talk to him. *See id.* at 1155. This Court ultimately reversed the grant of suppression, holding that the officer's initial interaction with the defendant was a mere encounter because the request for the defendant to "come here" was not a substantial impairment on the defendant's liberty of movement. *Id.*

An "investigative detention" is interchangeably labeled as a "stop and

frisk" or a "***Terry***[5] stop." ***Commonwealth v. Brame***, 239 A.3d 1119, 1128

(Pa.Super. 2020), *appeal denied*, 666 Pa. 240, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> *  *  *
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (internal

citations omitted).

In other words, "the question of whether reasonable suspicion existed

at the time of an investigatory detention must be answered by examining the

totality of the circumstances to determine whether there was a particularized

and objective basis for suspecting the individual stopped of criminal activity."

***Commonwealth v. Cottman***, 764 A.2d 595, 598-99 (Pa.Super. 2000)

---

[5] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

(quoting *Commonwealth v. Beasley*, 761 A.2d 621, 625-26 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)).

> In making this determination, we must give due weight…to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citations and quotation marks omitted).

"Finally, an arrest or custodial detention must be supported by probable cause to believe the person is engaged in criminal activity." *Commonwealth v. Livingstone*, 644 Pa. 27, 36 n.1, 174 A.3d 609, 614 n.1 (2017).

Instantly, the trial court explained:

> In the instant case, Officer Guercio spotted [A]ppellant who fit the description broadcast over police radio walking in Clark Park close in time and proximity to the alleged crimes. Officer Guercio, who was alone at the time, approached [A]ppellant but did not exit his vehicle or draw his weapon, rather the officer approached and asked [A]ppellant if he had seen anything related to an attempted rape. When [A]ppellant answered in the negative, Officer Guercio exited his patrol car and asked [A]ppellant for identification. Appellant could not produce identification but gave his name. Up to this point, the level of interaction between the two was a mere encounter.
>
> Appellant was wearing a white t-shirt when Officer Guercio first observed him. However, upon exiting his patrol car, the officer noticed that [A]ppellant was holding a white shopping bag. This provided the Officer with reasonable

suspicion that [A]ppellant was the person described over police radio. Officer Guercio asked [A]ppellant to place his hands on the hood of the officer's police car so [A]ppellant could be frisked, to which [A]ppellant agreed. Officer Guercio also asked [A]ppellant to place the white shopping bag on the hood of his police car, to which [A]ppellant also agreed. In the shopping bag, the officer could see a black jacket. Following the frisk, Officer Guercio placed [A]ppellant in handcuffs while awaiting backup.

What started out as a mere encounter had ripened into an investigative detention. Accordingly, the propriety of the suppression court's ruling hinges on whether Officer Guercio had the required reasonable suspicion to detain [A]ppellant.

* * *

Here, in addition to [A]ppellant matching the physical description of the individual broadcast over police radio, the 911 call was not provided by an anonymous tipster. Rather, it was given by the complainant moments after the alleged crime occurred. Additionally, Officer Guercio noticed that [A]ppellant was sweating, suggesting he may have been nervous, and that he had fresh scratches and abrasions on his arms, which the officer believed were consistent with someone falling or tackling another. These additional factors provided Officer Guercio with a reasonable belief, based upon the totality of the circumstances, that [A]ppellant was involved in recent criminal activity. As a result, the officer's decision to frisk and briefly detain [A]ppellant for investigative purposes was proper.

(Trial Court Opinion, 4/3/24, at 8-9) (internal citations omitted).

The record supports the trial court's conclusions. At the time that Officer Guercio drove into Clark Park, without his lights or sirens on, he observed Appellant, who matched the basic description of the suspect given over the radio: a black male in his thirties, wearing dark pants and carrying a white shopping bag. At that time, he asked questions regarding what Appellant had

observed, which constituted a mere encounter. ***See Goldsborough, supra***. ***See also Newsome, supra***. Although Officer Guercio requested that Appellant come over to his car, this Court has previously held that such requests do not constitute investigative detentions if the defendant's liberty of movement is not substantially impaired, and there was no evidence in the record that Appellant's movement was so impaired. ***See id.*** As Appellant approached, Officer Guercio observed his nervousness and the wounds on his arms, as well as the shopping bag and general descriptive match of Appellant to the flash information. These factors considered together, in light of the officer's experience and ability to draw inferences, provided reasonable suspicion that supported Appellant's further detention. ***See Young, supra***; ***Jones, supra***. Therefore, the suppression court appropriately denied Appellant's motion. ***See Williams, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/3/2025