J-A22034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                              :                PENNSYLVANIA

            Appellee               :

       v.                       :

                                               :

CHRISTOPHER L SHAW             :

                                               :

           Appellant            :           No. 197 MDA 2021

Appeal from the Judgment of Sentence Entered January 28, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0004970-2019

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:            **FILED: FEBRUARY 3, 2022**

Appellant, Christopher L. Shaw, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his stipulated bench trial convictions for firearms not to be carried without a license and public drunkenness.[1]  We affirm.

The trial court opinion sets forth the relevant facts as follows:

> At the suppression hearing, Detective Burgett testified that on August 26, 2019, at approximately 9:45 p.m., he and Officer Schwebel ("Schwebel") were dispatched to a weapons call in the 400 block of Poplar Street in Lancaster City.  The caller indicated that a white male wearing a baseball hat and gray or red T-shirt was walking on Poplar Street with a rifle.  Burgett and Schwebel arrived at the location four minutes later without activating their patrol vehicle's lights or siren and parked their vehicle six or seven houses west of where they encountered Appellant.  Burgett noted that Appellant matched the description as a white male who was wearing a baseball hat and black T-shirt.  The

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1) and 5505, respectively.

officers exited their vehicle and began walking towards Appellant, who was the only person Burgett saw on the entire block.

From roughly twenty yards away, Burgett asked in a calm tone of voice whether he could talk to Appellant. Burgett's weapon was holstered, and he did not tell Appellant he was not free to leave. In response, Appellant approached the officers saying something about a guy chasing a girl. While Appellant was coming closer, Burgett saw an unknown object near Appellant's front waistband. As they got closer to one another, Appellant turned around, crouched over a couple times, kept grabbing onto things to hold, and stated he had to urinate. Burgett maintained a distance because of Appellant's suspicious behavior. Although Burgett could not say for sure, he believed Appellant appeared to be manifestly under the influence of alcohol.

As Appellant began to walk away from the encounter, Burgett instructed him to stop and Appellant complied. When the officers reached Appellant, Burgett observed from three feet away that Appellant had bloodshot eyes and the odor of alcohol emanating from his breath. Burgett also observed the butt of a handgun beneath Appellant's shirt at his belt line. When Burgett asked Appellant if he had anything in his waistband, Appellant replied that he did not. Burgett then told Appellant to put his hands behind his back and Appellant responded by acknowledging he had a firearm in his waistband. Eventually, Burgett handcuffed Appellant and Appellant urinated himself. After handcuffing Appellant, Burgett removed the firearm from Appellant's waist. Burgett then contacted county communications and determined that Appellant did not have a permit to carry a concealed firearm.

Burgett was wearing a body camera during this incident, footage from the body camera was marked as Commonwealth Suppression Hearing Exhibit Number 1, and the video was played for the court. After viewing the video, the court noted that Appellant showed indicia of intoxication.

(Trial Court Opinion, filed March 11, 2021, at 1-3) (internal citations omitted).

Appellant filed a motion to suppress on December 24, 2019. On July 29, 2020, the court held a suppression hearing, and it denied Appellant's motion on September 14, 2020. On October 9, 2020, the court held a stipulated bench trial, after which the trial court found Appellant guilty of firearms not to be carried without a license and public drunkenness. The court sentenced Appellant to 6 to 23 months' house arrest followed by 3 years' probation on January 28, 2021. Appellant timely filed a notice of appeal on February 12, 2021. On February 16, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied.

Appellant raises the following issues for our review:

> Whether the trial court erred, as a matter of law, when it denied Appellant's suppression motion and specifically found: (a) Appellant's detention was supported by reasonable suspicion to believe he was committing the crime of public drunkenness or a firearms offense; and (b) alternatively, if there was no detention until Appellant was arrested, that there was probable cause to arrest him for public drunkenness?

> Whether the trial court erred, as a matter of law, when it found there was sufficient evidence in the record to convict Appellant of public drunkenness, beyond a reasonable doubt?

(Appellant's Brief at 3).

In his first issue, Appellant argues that his initial encounter with the police rose from a mere encounter to an investigative detention after the police requests escalated to commands. Appellant claims that the police

subjected him to an unlawful investigative detention without reasonable suspicion to believe he was committing or had committed a crime. Instead, Appellant reasons that the police had only a hunch that criminal activity was afoot but without specific and articulable facts to warrant Appellant's seizure. Appellant asserts that his bloodshot eyes and the odor of alcohol were insufficient to establish that he was manifestly under the influence of alcohol and a danger to himself to justify an investigative detention. Further, Appellant alleges that the police did not have reasonable suspicion to believe Appellant committed any weapons offense. Appellant contends that during his unlawful detention, the police obtained evidence used as justification of his unlawful arrest.

Alternatively, Appellant argues that the court erred when it found the police had probable cause to arrest him for public drunkenness. Appellant alleges error occurred when the court relied on evidence such as Appellant crouching over, grabbing onto things, and urinating himself. Appellant contends that this evidence related to any potential indicia of intoxication occurred after Appellant was subjected to an unlawful detention. Further, Appellant reasons that even if this evidence was obtained lawfully, it still fails to provide sufficient probable cause to support Appellant's arrest for public drunkenness. Appellant concludes that this Court should overturn the denial of his suppression motion and grant appropriate relief. We disagree.

"Our standard of review in addressing a challenge to a trial court's denial

of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. H. Williams***, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Id.*** at 27. The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. ***In re L.J.***, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. ***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa.Super. 2017) (quoting ***Commonwealth v. Jones***, 121 A.3d 524, 526-27 (Pa.Super. 2015), *appeal denied*, 635 Pa. 750, 135 A.3d 584 (2016)).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people

to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. ***Commonwealth v. Morrison***, 166 A.3d 357, 363-64 (Pa.Super. 2017). "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Hampton***, 204 A.3d 452, 456 (Pa.Super. 2019). Because interactions between law enforcement and the general citizenry are widely varied, search and seizure law examines how the interaction is classified and if a detention has occurred. ***Commonwealth v. DeHart***, 745 A.2d 633, 636 (Pa.Super. 2000).

The focus of search and seizure law "remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." ***Commonwealth v. Moultrie***, 870 A.2d 352, 356 (Pa.Super. 2005) (quoting ***Commonwealth v. Blair***, 860 A.2d 567, 571 (Pa.Super. 2004)) (internal quotation marks omitted). "[I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether...the citizen-subject has been seized." ***Commonwealth v. Strickler***, 563 Pa. 47, 57, 757 A.2d 884, 889 (2000).

Contacts between the police and citizenry fall within three general

classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (quoting *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)). During a mere encounter, "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

The Pennsylvania Supreme Court has instructed this Court to view "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." *Commonwealth v. Parker*, 161 A.3d 357, 363 (Pa.Super. 2017). The following non-exclusive list of factors are also relevant to the inquiry:

[T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Id.*

Police must have reasonable suspicion that a person seized is engaged in unlawful activity before subjecting that person to an investigative detention. *Commonwealth v. Cottman*, 764 A.2d 595 (Pa.Super. 2000).

An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

* * *

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." **Cottman,** **supra** at 598-99 (quoting **Commonwealth v. Beasley**, 761 A.2d 621, 625-26 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)). "These circumstances are to be viewed through the eyes of a trained officer." **Commonwealth v. Jackson**, 907 A.2d 540, 543 (Pa.Super. 2006).

> In making this determination, we must give due weight...to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

**Commonwealth v. Young**, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citations and quotation marks omitted). Behavior indicative of the presence of a firearm contributes to the totality of the circumstances in determining whether there is reasonable suspicion to investigate further. **Commonwealth v. Hicks**, 652 Pa. 353, 208 A.3d 916 (2019), *cert. denied*, ____ U.S. ____, 140 S.Ct. 645, 205 L.Ed.2d 410 (2019).

An arrest or "custodial detention" must be supported by probable cause:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably

trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. R. Williams***, 2 A.3d 611, 616 (Pa.Super. 2010) (*en banc*), *appeal denied*, 610 Pa. 586, 19 A.3d 1051 (2011) (internal citations and quotation marks omitted) (emphasis in original).

"The key difference between an investigative and a custodial detention is that the latter 'involves such coercive conditions as to constitute the functional equivalent of an arrest.'" ***Commonwealth v. Gonzalez***, 979 A.2d 879, 887 (Pa.Super. 2009) (quoting ***Commonwealth v. Pakacki***, 587 Pa. 511, 519, 901 A.2d 983, 987 (2006)). Unlike a custodial detention or a formal arrest, an investigative detention does not require probable cause because it lacks the same magnitude of coercive conditions. ***Commonwealth v. Douglass***, 539 A.2d 412 (Pa.Super. 1988).

The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

***Commonwealth v. Teeter***, 961 A.2d 890, 899 (Pa.Super. 2008).

In ***Commonwealth v. Newsome***, 170 A.3d 1151 (Pa.Super. 2017), a

- 10 -

police officer responded to an anonymous radio call that several individuals were passing around a firearm in an area in Philadelphia known for shootings. The officer arrived at the location in full uniform and a marked patrol car, without the lights or sirens engaged. *Id.* at 1156. The officer approached the defendant and he "asked" the defendant "to come here" so he could talk to him, but the defendant refused and continued walking down the street. *Id.* At a suppression hearing, the officer testified that he approached the defendant to both investigate the radio call and because he believed the defendant to be in violation of Philadelphia's curfew. *Id.*

No evidence suggested that the officer brandished his weapon or engaged in an overwhelming show of force. *Id.* Further, the officer did not tell the defendant that he was not free to leave, nor was there any evidence presented that he positioned himself in a manner that obstructed the defendant's ability to continue walking down the street. *Id.* Notably, the officer acknowledged on cross-examination that he "asked [the defendant] to stop" two or three times. However, there was no evidence that the officer threatened any consequences for non-compliance or used an authoritative tone. *Id.*

This Court reversed and remanded the trial court's grant of the defendant's motion to suppress. *Id.* Specifically, this Court held that the defendant was not seized during his initial encounter, where the officer's request of the defendant that he "come here" so he could talk to him "was not

a substantial impairment on the defendant's liberty of movement, particularly considering the officer's legitimate concerns for the safety of the community and his sound belief that [the defendant] may have been in violation of Philadelphia's curfew." *Id.*

Instantly, the court explained that the initial interaction between Appellant and the police officers constituted a mere encounter, stating:

> In the present case, Burgett and Schwebel responded to the scene without activating their vehicle lights or siren, parked their vehicle six or seven houses away from where they encountered Appellant, exited their vehicle, and began walking towards Appellant. From twenty yards away, Burgett asked Appellant in a calm tone of voice whether they could speak. Burgett's weapon was holstered and he did not tell Appellant he was not free to leave.

(Trial Court Opinion at 4).

We agree with the court's analysis that the initial interaction between the officers and Appellant was a mere encounter. This initial interaction involved no police lights, guns drawn, intimidating movement, show of force, obstruction, physical restraint, or commanding tone of voice. ***See Mendenhall, supra***; ***Newsome, supra***. The officers conveyed no demand for compliance, they merely asked if they could speak to Appellant. Therefore, the initial interaction was a mere encounter which did not require any level of suspicion. ***See Goldsborough, supra***; ***Bryant supra***.

Further, the court provided its reasons for how this mere encounter escalated to an investigatory detention:

> [O]fficers encountered Appellant four minutes after

- 12 -

receiving a report of a man walking in the street with a gun. Appellant was the only person on the street and he matched the description given. Appellant voluntarily approached the officers and said something about a guy chasing a girl. During this initial interaction, Burgett saw an unknown object near Appellant's front waistband. Burgett maintained a distance because of Appellant's suspicious behavior. As they got closer to one another, Burgett observed Appellant turn around, crouch over a couple of times, and keep grabbing onto things to hold. Appellant also stated he had to urinate. Based on these observations, Burgett reasonably believed that Appellant was manifestly under the influence of alcohol. Therefore, Burgett was permitted to conduct an investigative detention.

(Trial Court Opinion at 6-7).

Our review of the record supports the court's assessment that the officers' initial interaction with Appellant was a mere encounter that developed into an investigative detention. The record further supports the suppression court's decision that Officer Burgett had reasonable suspicion to conduct an investigatory detention. The following facts support this determination. Officer Burgett was initially dispatched for a weapons call involving a white male wearing a baseball hat and either a gray or red T-shirt walking down the road carrying a rifle. (**See** N.T. Suppression, 7/29/20, at 7). Upon arrival to this location within five minutes of the dispatch, Officer Burgett observed only one person on the entire block, who was later identified as Appellant. (**Id.** at 8). Appellant matched the general description of the information in the dispatch. Although the description did not provide an exact match as Appellant was wearing a black T-shirt and not a gray or red one, our Supreme Court has rejected the notion that "the existence of a single fact contradictory

to a police radio broadcast required an officer to ignore…other incriminating factors." **See Commonwealth v. Walls**, 53 A.3d 889, 894 (Pa.Super. 2012) (citing **Commonwealth v. Ellis**, 541 Pa. 285, 295, 662 A.2d 1043, 1048 (1995)).

During the initial mere encounter, Officer Burgett noticed "something near [Appellant's] front waistband…" and Appellant "kept grabbing on to stuff to hold. And then [Appellant] was crouching over and he had stated that he had to urinate." (N.T. Suppression at 10). At this point, Officer Burgett could not determine whether Appellant was intoxicated but the officer testified that "it pointed in that direction." (**Id.**) Subsequently, Appellant attempted to walk away from this interaction, and Officer Burgett "told him to stop and stop walking away from us." (**Id.** at 11). Once Appellant complied with the request to stay, Officer Burgett "noticed an odor of alcohol and [Appellant's] bloodshot eyes and then [Officer Burgett] observed a bulge, which to [the officer] was…the butt of a handgun coming through [Appellant's] shirt right at [Appellant's] belt line." (**Id.**)

The totality of the circumstances shows that Officer Burgett encountered a person matching the general description of an individual possessing a firearm on a public street. Officer Burgett made articulable specific observations about Appellant, including his demeanor, the odor of alcohol, and a bulge in his waistband. Based on these observations, Officer Burgett reasonably concluded, in light of his experience, that criminal activity was

afoot, and that Appellant was involved in that activity. ***See Jones, supra***; ***Cottman, supra***. Thus, we agree with the trial court that police had reasonable suspicion to conduct the investigatory detention here.

Further, Appellant's alternative argument that the officers lacked probable cause to arrest him for public drunkenness warrants no relief. In ***Commonwealth v. Canning***, 587 A.2d 330 (Pa.Super. 1991), police responded to a radio call to investigate complaints that a stranger was pacing back and forth on a neighbor's porch. When the police officer arrived, he observed the defendant wearing no shirt, shoes, or socks, pacing back and forth on the neighbor's front porch. ***Id.*** at 331. The defendant informed the officer that he was looking for his car. ***Id.*** Because the defendant appeared intoxicated and confused and had an odor of alcohol on his breath, the officer decided to arrest the defendant for public intoxication. ***Id.*** A search incident to that arrest revealed narcotics in the defendant's pants pockets. ***Id.*** Although the defendant was not charged with public intoxication, this Court determined that the police had probable cause to arrest the defendant for public intoxication where the officer noticed an odor of alcohol on the defendant's breath and the defendant appeared both confused and intoxicated. ***Id.*** at 332.

Instantly, the court explained that probable cause existed to arrest Appellant for public drunkenness as follows:

> Here, Appellant initially said something about a guy chasing
> a girl. Burgett then noted that Appellant crouched over a

couple of times, kept grabbing onto things to hold, stated he had to urinate, had bloodshot eyes, and the odor of alcohol emanated from his breath. Appellant exhibited signs of intoxication that a layman would be familiar with, let alone an experienced law enforcement officer. Consistent with [**Commonwealth v. Bennett**, 124 A.3d 327 (Pa.Super. 2015)[2]], Burgett recognized that Appellant's crouching over and grabbing onto things to hold was an indicator of intoxication. So was Appellant's need to urinate. Moreover, Burgett saw that Appellant possessed a firearm, and an intoxicated person in possession of a firearm presents a danger to himself and others. Consistent with **Canning**, the odor of alcohol on Appellant's breath, his bloodshot eyes, and his suspicious behavior also gave rise to probable cause to arrest Appellant for public drunkenness.

(Trial Court Opinion at 8).

The record supports the court's finding that the officers had probable cause to arrest Appellant for public drunkenness where Appellant appeared in public intoxicated carrying a loaded firearm in his waistband.[3] **See R. Williams, supra**. Because the trial court's factual findings are supported by the record, the court's suppression ruling was proper. **See H. Williams, supra**.

---

[2] In **Bennett**, this Court described the following as indicia of intoxication for public drunkenness: stumbling and slurred speech, flailing arms about, shouting at and arguing with police.

[3] We disagree with Appellant's contention that Officer Burgett's observations of something in Appellant's waistband, Appellant crouching over, and Appellant grabbing onto items to maintain his balance occurred after Appellant was detained. (**See** Appellant's Brief at 37). The record establishes that these observations all occurred when Officer Burgett initially encountered Appellant before the officer instructed Appellant to stop walking away from the police. (**See** N.T. Suppression at 10).

In his second issue, Appellant argues that the evidence was insufficient to sustain his conviction for public drunkenness. Appellant contends that the evidence adduced at trial failed to establish that Appellant was manifestly under the influence of alcohol to the point of being a danger to himself and others. Appellant maintains that the only evidence related to his intoxication consisted of him having the odor of alcohol, bloodshot eyes, urinating himself, crouching over, and placing his hand on a neighbor's railing. Appellant stresses that the record is devoid of any evidence that he appeared confused, slurred his speech, staggered, stumbled, yelled, acted disruptive, or failed to comply with any police instructions. Appellant concludes the evidence was insufficient to sustain his public drunkenness conviction, and this Court must vacate his conviction and judgment of sentence. We disagree.

When examining a challenge to the sufficiency of evidence:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the

- 17 -

> [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa.Super. 2019) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011)).

The Crimes Code defines public drunkenness as follows:

> A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance…to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

18 Pa.C.S.A. § 5505. Indicia of intoxication include but are not limited to: the offender's actions and behavior, speech, lack of coordination and loss of concentration, odor of alcohol, bloodshot eyes, demeanor, physical appearance, and other physical signs of intoxication. *Commonwealth v. Segida*, 604 Pa. 103, 116, 985 A.2d 871, 879 (2009). Generally, intoxication is a condition within the understanding or powers of observation of ordinary citizens. *See Commonwealth v. Spencer*, 888 A.2d 827 (Pa.Super. 2005). *See also Commonwealth v. Neiswonger*, 488 A.2d 68 (Pa.Super. 1985) (explaining officer may render opinion as to defendant's state of intoxication).

In *Bennett, supra*, this Court held sufficient evidence existed to sustain the defendant's conviction for public drunkenness where the evidence established that the defendant flailed his arms about, shouted at and argued with both the security guard and the police, and was, on one occasion,

jumping in and out of patrons' cars. *Id.* This Court concluded that "[s]uch activities may be properly classified as both annoying and dangerous." *Id.* at 331.

Instantly, the court explained why sufficient evidence existed to sustain Appellant's conviction for public drunkenness as follows:

> Burgett observed Appellant crouch over a couple of times, keep grabbing onto things to hold, and state he had to urinate. Appellant had bloodshot eyes and the odor of alcohol emanating from his breath. Appellant urinated himself after being taken into custody. Video from Burgett's body camera corroborated his testimony regarding Appellant's indicia of intoxication. Appellant appeared in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity. An intoxicated person in possession of a firearm clearly presents significant danger to himself or others as a result of impaired judgment or coordination. Moreover, Appellant's presence in such a state on a residential street would no doubt alarm or annoy others.

(Trial Court Opinion at 9-10).

We agree with the court's analysis. Officer Burgett, who had seven years of experience as a police officer, observed that Appellant exhibited the following indicia of intoxication: Appellant had bloodshot eyes, an odor of alcohol emanating from his breath, he kept grabbing onto things to hold, crouched over a couple of times, and ultimately urinated himself. *See Segida, supra*. Further, Appellant's possession of a loaded firearm while intoxicated posed a risk to those around Appellant. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient

to sustain Appellant's conviction under Section 5505.  ***See Jackson, supra***.

Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/03/2022